# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jason Berner, | Civ. No. 21-1639 (JWB/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Metropolitan Council, *Metro Transit Division, a Minnesota public corporation and political subdivision*, | |
| Defendant. | |

Timothy J. Louris, Esq., Emily L. Marshall, Esq., Nicolas R. Kaylor, Esq., Miller O'Brien Jensen, P.A., counsel for Plaintiff.

Susan E. Ellingstad, Esq., David W. Asp, Esq., Laura M. Matson, Esq., Lockridge Grindal Nauen P.L.L.P., counsel for Defendant.

Summary judgment is denied in this case where the employer lacked a clear policy for handling medical disagreements over an employee's fitness to work and did not give the employee a fair opportunity to contest medical decisions that impacted his employment.

The dispute stems from a series of employment-related actions. The Metropolitan Council advised its employee, Metro Transit bus driver Jason Berner, to seek a second opinion after its hired doctor had deemed him medically unfit to drive. Mr. Berner did so, and the second doctor reached the opposite conclusion: Mr. Berner was fit to drive. The Metropolitan Council had no clear process for resolving the doctor disagreement. It now asks the Court to resolve the medical dispute over an employee's fitness to drive through

a summary judgment motion. (Doc. No. 24.) The Court finds genuine issues of material fact, and summary judgment is denied.

## BACKGROUND

Ask a typical Twin Cities resident where to catch a city bus and they will point to the blue-and-yellow vehicles marked with the red circle-T logo of Metro Transit. Metro Transit is the division of the Metropolitan Council (collectively referred to as "Met Council") that employs a fleet of drivers to operate public transportation in the Twin Cities metro area. This case is about the health and fitness of a particular bus driver, Jason Berner.

In 2017, Mr. Berner experienced health difficulties that required taking a medical leave. After treatment, he was ready return to work. Before doing so, Met Council required that he qualify by passing a fitness examination at its designated medical provider, Minnesota Occupational Health ("MOH").[1] Dr. Kipp at MOH found Mr. Berner medically unfit to drive a bus and ultimately recommended that he be permanently disqualified from doing so.

Mr. Berner consulted Met Council's Manager of Occupational Health, Connie DeVolder, to explore options for obtaining a second opinion. Ms. DeVolder advised him to see a DOT-registered physician for a second opinion and recommended the Mayo

---

[1] Federal Motor Carrier Safety Administration ("FMCSA") regulations require commercial drivers to obtain certification from a doctor registered with the Department of Transportation ("DOT") indicating they are medically fit to drive—known as a "DOT card." Met Council is exempt from those regulations but voluntarily followed FMCSA guidance on driver-fitness standards, and generally required that its drivers obtain DOT cards from Minnesota Occupational Health.

2

Clinic ("Mayo"). (*See* Doc. No. 28-6, DeVolder Tr. at 47:20–48:3.) She believed Mr. Berner had a right to a second opinion under the Americans with Disabilities Act ("ADA"). (*Id.* at 48:16-20.) Important to summary judgment, she assured Mr. Berner that if he received a DOT card from Mayo, Met Council would honor it. (*See id.* at 48:4-8; *see also* Doc. No. 28-21 at 1.)

Mr. Berner followed Met Council's advice and was examined by a DOT-registered Mayo physician, Dr. Steinkraus. Dr. Steinkraus found Mr. Berner fit to drive a Metro Transit bus and issued him a three-month DOT card with some driving restrictions. Mr. Berner commenced driving on the DOT card issued from Mayo.

Mr. Berner again returned to Mayo for DOT exams in March 2018 and October 2018, each time as his DOT card was set to expire and he medically needed to re-qualify. At each of these times, unlike the initial visit, he received a Mayo DOT card *with no restrictions* and resumed driving on the new card authorization. Ms. DeVolder had never told Mr. Berner that future DOT cards were required to be issued by MOH (*see id.* at 48:25–49:16), and no one from Met Council took issue with the Mayo-issued DOT cards.

According to Mr. Berner, when his card was next set to expire in October 2019, his immediate supervisor directed him to get a new DOT card from MOH, and no Mayo option was offered. Mr. Berner complied and went to MOH for examination. By this time, Mr. Berner had been driving without incident for nearly two years: three months in 2018 under Dr. Steinkraus's restrictions and then the next 18 months with no restrictions. But Dr. Kipp's assessment at MOH in 2019 was the same as in 2017: Mr. Berner was permanently medically unfit to drive a bus. As before, Mr. Berner then sought a second

opinion at Mayo, where he was again deemed medically qualified to drive, was again issued a DOT card without driving restrictions, and was again back to driving with a Mayo DOT card without objection from his employer.

Things changed in January 2020. Met Council abruptly rejected Mr. Berner's Mayo-issued DOT card and stopped him from driving. (*See* Doc. No. 28-11, Aebi Tr. at 97:18–98:10, 99:24–100:14.) No explanation was offered other than to insist that only DOT cards from MOH would be accepted going forward. (*See id.* at 108:2-13.) The prior agreement to accept a Mayo-issued DOT card and the fact of the Mayo approval both were effectively rejected.

Met Council had no written policy or procedure for appealing an MOH doctor's findings or for resolving the MOH–Mayo disagreement over Mr. Berner's fitness to drive. (*See id.* at 137:18–138:16.) Notably, Met Council did not refer Mr. Berner to a third, unaffiliated doctor to settle the opposing assessments.[2] Instead, Met Council directed Mr. Berner back to MOH, where one of Dr. Kipp's colleagues examined him and mirrored Dr. Kipp's conclusion: Mr. Berner was unfit to drive—permanently. After a fruitless search for a different Metro Transit job, Met Council terminated Mr. Berner's employment in October 2020.

Mr. Berner filed suit in July 2021, alleging disability discrimination under the

---

[2]   Ms. DeVolder testified that in the event of conflicting opinions, "we go down the path of finding a third and binding opinion" from another DOT-registered physician ultimately selected by the worker. (*See* Doc. No. 28-6, DeVolder Tr. at 29:25–31:2.) She testified that she attempted that process in Mr. Berner's case, failed, and then abandoned the process. (*See id.* at 31:3-10.)

ADA and the Minnesota Human Rights Act. Met Council seeks summary judgment.

## DISCUSSION

The Court will grant summary judgment "if the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014).

This summary judgment motion involves two fundamental issues. The first is whether the record underlying Mr. Berner's claims presents genuine issues of material fact. The second is whether Met Council's medical-fitness process, as applied to Mr. Berner, warrants judgment as a matter of law. Met Council argues it is entitled to judgment because Mr. Berner's undisputed failure to obtain a DOT card from an MOH doctor makes him unqualified to drive for Metro Transit. Met Council also argues that Mr. Berner's underlying medical condition carries an undisputed risk of sudden incapacitation while driving, establishing a direct-threat defense.

To analyze these issues and arguments, the Court will review Met Council's medical-fitness process and the MOH doctors' medical conclusions together as factors that intertwine to impact the decision on Mr. Berner's employability.

Mr. Berner's ADA claim turns on his qualification to operate a Metro Transit bus.

To be qualified under the ADA, an employee must demonstrate the ability to perform the job's essential functions and meet the job requirements, including skill, experience, and education. *See* 42 U.S.C. §§ 12111(8), 12112(a); 29 C.F.R. § 1630.2(m); *Weber v. Strippit, Inc.*, 186 F.3d 907, 916 (8th Cir. 1999). The ADA prohibits employers from using qualification standards, employment tests, or selection criteria that exclude or tend to exclude individuals with disabilities. *See* 42 U.S.C. § 12112(b)(6). But employers may require that individuals not pose a "direct threat" to health and safety. *See* 29 C.F.R. § 1630.15(b)(2). A "direct threat" refers to a significant risk to the health or safety of others that cannot be eliminated through policy modifications, procedural or practice changes, or the provision of auxiliary aids or services. *See* 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r); *Bragdon v. Abbott*, 524 U.S. 624, 648–49 (1998).

Met Council contends that its MOH fitness evaluation process applied uniformly to all bus drivers and was designed to disqualify unfit drivers. The Court does not pass judgment on Met Council's process in general, neither determining its inherent reasonableness nor assessing whether an employer can ever rely on fitness evaluations from its preferred medical provider in the face of potentially conflicting medical opinions about worker fitness. Employers may have valid reasons for implementing such processes and adhering to their preferred doctors' recommendations, even where there is medical disagreement. *See, e.g.*, *Smith v. Lipari*, Civ. No. 2:20-210, 2021 WL 5588091, at *3 (N.D. Ind. Nov. 30, 2021) (recognizing that giving employees "free rein" to choose their own doctors poses risk for "dangerous mischief"); *see also Moncak v. Liberty Life Assurance Co. of Boston*, No. 3:15-CV-01998, 2017 WL 1196514, at *10–13 (M.D. Pa.

Mar. 31, 2017) (granting summary judgment where ERISA plan administrator credited its own doctor's opinion over conflicting opinions from plaintiff's treating physicians).

However, courts must not exhibit such deference that an employer's reliance on its preferred doctors goes unquestioned. *See, e.g.*, *E.E.O.C. v. Amsted Rail Co., Inc.*, 280 F. Supp. 3d 1141, 1156 (S.D. Ill. Nov. 16, 2017) (observing that employers "cannot simply farm the decision-making function out to a doctor and then argue it is absolved of liability for the doctor's decision" but must also assess the reasonableness of the conclusions); *see also McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172–73 (6th Cir. 2003) (stating that even under "extremely deferential" review of ERISA administrator decisions, courts' deference to administrators' reliance on a medical opinion should not become "rubber stamps").

The Court neither reaches nor addresses these broader questions. In this case, it is undisputed that Met Council deviated from its "MOH doctors only" policy by advising Mr. Berner to seek a second fitness opinion from Mayo and assuring him that a DOT card from Mayo would be accepted. It then abruptly rejected his Mayo-issued DOT card and reverted to the "MOH only" rule two years (and two card renewals) later.³ In the end, Met Council had Mr. Berner's fitness decided by a doctor from the same organization

---

³ Met Council, through Ms. DeVolder (the Manager of Occupational Health at the time), expressly acknowledged that it deviated from its "MOH doctors only" policy in Mr. Berner's case. (Doc. No. 28-6, DeVolder Tr. at 55:12-23.) When asked at oral argument about Ms. DeVolder's admission, Met Council responded with a non-sequitur: "She is no longer in that role." Ms. DeVolder's resignation does not take back what she directly advised Mr. Berner to do for his DOT card process. And nothing in the record indicates that Met Council told Mr. Berner that a Mayo DOT card was "one time only."

that twice already had found him permanently medically unfit to drive, despite the qualifying assessments from Mayo.

When an employee is offered and accepts an alternate process for medical-fitness qualification, the employer must execute and follow through on that process in a reasonable manner. The employee should not be left on a dead-end street, a path to nowhere, because the employer unilaterally or arbitrarily terminates the prior agreement. For summary judgment purposes, taking the evidence in the light most favorable to the non-movant, medical opinions derived from an arbitrary or unreasonable medical assessment process are not better than the process that yielded those opinions in the first place. Arbitrariness or unreasonableness calls into question the whole process, fruit and vine.

Met Council cites cases where courts deferred to employers who rely on their preferred provider and granted summary judgment despite conflicting medical opinions. Critically, however, the employers in those cases were subject to FMCSA regulations, which include an administrative process that resolves doctor disputes by reviewing or having the parties agree to a final medical exam from an impartial medical specialist. *See* 49 C.F.R. § 391.47(b); *see also Smith*, 2021 WL 5588091, at *4 (noting that availability of the FMCSA remedy "bolsters" the conclusion that the employer was entitled to rely on its own doctors at summary judgment). This process was absent in Mr. Berner's case.

Viewing the evidence in the light most favorable to Mr. Berner, a reasonable jury could conclude that Met Council unreasonably declared Mr. Berner permanently unfit to drive. A reasonable jury could find that the DOT card from a DOT-registered doctor at

Mayo qualified Mr. Berner as a bus driver, and that his prior history of driving with a Mayo DOT card (without issue or objection for nearly two years) meant that he did not pose a direct threat to public safety. A reasonable jury could also find that Met Council failed to adhere to the process it believed (and previously represented) protected Mr. Berner's rights under the ADA.

The Court therefore finds genuine issues of material fact regarding the reasonableness of Met Council's medical-fitness assessment process, as specifically applied to Mr. Berner, and the MOH doctors' opinions the process produced. Those material fact issues also preclude summary judgment for Met Council on Mr. Berner's ADA and Minnesota Human Rights Act claims.

## ORDER

**IT IS HEREBY ORDERED** that Defendant Metropolitan Council's Motion for Summary Judgment (Doc. No. 24) is **DENIED**.

Date: May 10, 2023

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge